**Case No. 25-30614**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**MICHAEL MCCLANAHAN; GARY CHAMBERS; EUGENE COLLINS,**
**PLAINTIFFS–APPELLEES**
**v.**
**BRANDON NOEL, MAYOR PRO TEMPORE, CITY OF BATON ROUGE,**
**PARISH OF EAST BATON ROUGE,**
**DEFENDANT–APPELLANT**

---

**ON APPEAL FROM**

United States District Court for the Middle District of Louisiana

3:17-cv-01720

# BRIEF OF APPELLEES MICHAEL MCCLANAHAN AND EUGENE COLLINS

William Most
Hope A. Phelps
Most & Associates
(504) 509-5023
williammost@gmail.com

Brian E. Lahti (*pro hac vice*)
Lahti Helfgott, LLC
(650) 390-4075
blahti@LHlitigation.com

**COUNSEL FOR PLAINTIFFS-APPELLEES**

## CERTIFICATE OF INTERESTED PERSONS

Michael McClanahan, *et al.*

Plaintiffs-Appellees,

v. No. 25-30614

Brandon Noel,

Defendant-Appellant.

The undersigned counsel of record certifies that the following listed persons as described in the fourth sentence of 5th Cir. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Michael McClanahan, Plaintiff-Appellee
2. Eugene Collins, Plaintiff-Appellee
3. Gary Chambers, Plaintiff-Appellee
4. William Most, Most & Associates, Counsel of Record
5. Hope Phelps, Most & Associates, Counsel of Record
6. David Lanser, Most & Associates, Counsel of Record
7. Brian Lahti, Lahti Helfgott, LLC, Counsel of Record
8. Jonathan Helfgott, Lahti Helfgott, LLC, Counsel

9. Amanda Hass, Counsel

10. Meghsha Barner, Counsel

11. Sarah Chervinsky, Counsel

12. Cameron Berthelsen, Counsel

13. Scott Wilson, Defendant-Appellee

14. City/Parish of Baton Rouge

15. Celia Cangelosi, Counsel of Record

Respectfully submitted,

*<u>/s/ William Most</u>*
WILLIAM MOST (No. 36914)
MOST & ASSOCIATES
Hope A. Phelps (La. Bar No. 37259)
David Lanser (La. Bar No. 37764)
201 St. Charles Ave.
Ste. 2500, # 9685
New Orleans, LA 70170
Tel: (650) 465-5023
Email: williammost@gmail.com

BRIAN E. LAHTI
LAHTI HELFGOTT LLC
Utah Bar No. 16298 (PHV)
Tel: (650) 390-4075
Email: blahti@LHlitigation.com

## RESPONSE TO REQUEST FOR ORAL ARGUMENT

Plaintiff-Appellants Michael McClanahan and Eugene Collins (hereinafter "Plaintiffs") acknowledge that Defendant-Appellee Brandon Noel (hereinafter "Defendant") has requested oral argument. Pursuant to Fed. R. App. P. 34(a)(2)(C), Appellants respectfully submit that oral argument is unnecessary given that the Defendant's primary argument for reversal has no legal basis or precedent whatsoever and his remaining arguments do not address one of the two independent bases on which the Trial Court concluded the Defendant violated Plaintiffs' First Amendment Rights and are readily capable of determination on the briefs. If oral argument is useful to the panel, however, Plaintiffs have no opposition.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .................................................. ii

RESPONSE TO REQUEST FOR ORAL ARGUMENT ....................................iv

TABLE OF CONTENTS ............................................................................v

TABLE OF AUTHORITIES .....................................................................vii

STANDARD OF REVIEW..........................................................................x

SUMMARY OF THE ARGUMENT ..........................................................1

PROCEDURAL HISTORY .......................................................................3

ARGUMENT..........................................................................................10

I. The Trial Court's judgment should be affirmed because Defendant's argument that the Trial Court accidentally dismissed the entire case has no basis in law. .........................................................................................10

II. The Trial Court's admission of the post-May 2017 comparator videos should be affirmed because courts repeatedly hold such evidence admissible to prove viewpoint discrimination. .......................................................15

III. The Mayor Pro Tem was the final policymaker with regard to removal of people making public comments. .................................................19

IV. Defendant's appeal should be denied because he provides no clear error in the Trial Court's factual findings ..................................................21

V. This Court should deny Defendant's appeal because his *Heaney*-district-court-footnote argument is wrong and inapplicable to these facts. .................... 24

VI. This Court should affirm the judgment because Defendant does not address the Trial Court's independent, alternative basis for finding Defendant violated Plaintiffs' First Amendment rights. .......... 27

CONCLUSION .......... 28

CERTIFICATE OF COMPLIANCE .......... 30

CERTIFICATE OF SERVICE .......... 31

# TABLE OF AUTHORITIES

## Cases

*Am. Freedom Def. Initiative v. WMATA.*,
901 F.3d 356 (D.C. Cir. 2018) .......... 17, 18

*Amberg v. FDIC*,
934 F.2d 681 (5th Cir. 1991) .......... 14

*Anderson v. City of Bessemer City*,
470 U.S. 564, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985) .......... viii

*Asgeirsson v. Abbott,*
696 F. 3d 454 (5th Cir. 2012) .......... 27

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*,
103 F.4th 383 (5th Cir. 2024) .......... 27

*Bennett v. Slidell*,
728 F.2d 762 (5th Cir. 1984) .......... 20

*Broussard v. Lafayette City-Parish Consol. Gov't*,
45 F. Supp. 3d 553 (W.D. La. 2014) .......... 12, 13

*Burge v. Parish of St. Tammany*,
187 F.3d 452 (5th Cir. 1999) .......... 19

*Castro Romero v. Becken,*
256 F.3d 349 (5th Cir. 2001) .......... 11

*Douglas v. Univ. of Pittsburgh*,
No. 15-938, 2016 WL 695661 (W.D. Pa. Jan. 19, 2016) .......... 12

*Dunn v. Guidry,*
No. 11-cv-489, 2012 WL 6216743 (M.D. Ga. Dec. 13, 2012) .......... 11

*Eltalawy v. Lubbock Indep. Sch. Dist.*,
816 F. App'x 958 (5th Cir. 2020) .......... 21

*Free Speech Coal., Inc. v. Paxton*,
606 U.S. 461 (2025) ........................................................................................27

*Gelin v. Hous. Auth. of New Orleans*,
456 F.3d 525 (5th Cir. 2006) ........................................................................21

*Guzman v. Hacienda Recs. & Recording Studio, Inc.*,
808 F.3d 1031 (5th Cir. 2015) ......................................................................viii

*Heaney v. Roberts*,
147 F.Supp.3d 600 (E.D. La. Dec. 2, 2015) ..........................................17, 25, 27

*Heaney v. Roberts*,
846 F. 3d 795 (5th Cir. 2017) ........................................................................26

*Kona Tech. Corp. v. S. Pac. Transp. Co.*,
225 F.3d 595 (5th Cir. 2000) ........................................................................viii

*Littlejohn v. New Orleans City*,
493 F. Supp. 3d 509 (E.D. La. 2020) ...........................................................13

*Mandel v. Doe*,
888 F.2d 783 (11th Cir. 1989) .......................................................................21

*Miller v. California*,
413 U.S. 15 (1972) ..........................................................................................27

*Morgan v. Swanson*,
755 F.3d 757 (5th Cir. 2014) .........................................................................18

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986) ........................................................................................21

*Peterson v. City of Fort Worth, Tex.*,
588 F.3d 838 (5th Cir. 2009) .........................................................................19

*Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.*,
653 F.3d 290 (3d Cir. 2011) ..........................................................................18

*Ridley v. Mass. Bay Transp. Auth.*,
390 F.3d 65 (1st Cir. 2004) .......... 18

*Torres v. Rubio*,
No. 24-40685, 2025 LX 474070 (5th Cir. Oct. 21, 2025) .......... viii

*Whiteland Woods, L.P. v. Twp. of W. Whiteland,*
193 F.3d 177 (3rd Cir. 1999) .......... 28

*Williams v. Zordan*,
2023 WL 6451111 (W.D. La. 2023) .......... 13

*Zavala v. City of Baton Rouge*,
No. 17-656-JWD-EWD, 2018 WL 4517461 (M.D. La. Sept. 20, 2018) .......... 12

**Rules**

Fed. R. Civ. P. 52(a)(6) .......... viii

Fed. R. Civ. Proc. 25 .......... 4

## STANDARD OF REVIEW

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Torres v. Rubio*, No. 24-40685, 2025 LX 474070, at *6-7 (5th Cir. Oct. 21, 2025), *quoting Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 601 (5th Cir. 2000); *see also* Fed. R. Civ. P. 52(a)(6) (instructing that after a bench trial, "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous"). When reviewing for clear error, the appellate court owes "great deference" to the district court's findings. *Torres, supra, quoting Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Torres, supra, Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985). Moreover, "[w]hen findings are based on determinations regarding the credibility of witnesses," they are owed "even greater deference." *Id.* at 575; *see also* Fed. R. Civ. P. 52(a)(6) ("[T]he reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.").

## SUMMARY OF THE ARGUMENT

This case involves a May 10, 2017, meeting of the Metropolitan Council, the legislative body of the City of Baton Rouge.

Not long before, officers of the Baton Rouge Police Department had killed a man named Alton Sterling. One of the agenda items at the May 10, 2017, meeting addressed the topic of investigations of officer-involved incidents. For that reason, a number of people – including Plaintiffs Michael McClanahan, Eugene Collins, and Gary Chambers – went to the meeting to express during public comment periods the viewpoint that the city should not return to "business as usual" without dealing with the killing.

Baton Rouge Mayor Pro Tempore Scott Wilson chaired the Metro Council meeting that day. He refused to let the Plaintiffs or others express their viewpoint during public comment. He immediately ordered police officers to forcibly remove anybody who tried to talk about Alton Sterling or criticize the Baton Rouge police department. For example, when Mr. Collins approached the podium during the public comment period, Mayor Pro Tem Wilson ordered police to "take him out" after only two and a half seconds.

Plaintiffs sued Wilson in his official capacity and the City for First Amendment

violations and other claims. Wilson refused to testify in the case to explain his conduct. But the defense's explanation for Wilson's behavior was that he was just removing people who spoke "off topic" during public comment. The problem with that theory was that the unanimous testimony and evidence showed that "when speakers went off-topic, Scott Wilson usually 'just let them finish and then let them sit down.'" ROA.1930. As the trial court noted, the defense offered "no record evidence of any community member being removed from a Metro Council meeting for 'being off-topic' *except* those who spoke about Alton Sterling and the police." ROA.1969 (emphasis in original).

After a bench trial, in September 2025 the trial court issued findings of fact and law and a judgment. The trial court ruled in favor of Plaintiffs McClanahan and Collins on two independent First Amendment claims: (1) viewpoint discrimination; and (2) violation of the right to attend a public meeting. The trial court ruled against Plaintiff Chambers on all claims, and against all Plaintiffs on a Fourteenth Amendment claim.

After that ruling, the defense appealed. Its primary argument on appeal relates to the fact that prior to trial, the trial court dismissed the City as a defendant for "procedural housekeeping" reasons and let the case proceed against the Mayor Pro Tem in his official capacity. The reason was those two nominal defendants were the

same entity, and so it was redundant to keep them both as defendants through trial. Defendant's theory on appeal is that the dismissal of one redundant party for "procedural housekeeping" reasons *necessarily and accidentally* led to the dismissal of all claims against all defendants. The Trial Court rejected that argument, characterizing it as an attempted "gotcha" tactic based on an incorrect (and, if followed, a manifestly unjust) application of general statements of law. ROA.1287, 1292-93.

In 2021, the Defendant acknowledged that he could not find a single case reflecting his position. ROA.1304. In the half decade since, he still has not been able to find one.

The remainder of Defendant's appellate brief addresses only viewpoint discrimination, the first of the two independent First Amendment claims the trial court granted. He makes no argument whatsoever about the other.

For those reasons, and those discussed herein, the Trial Court's judgment should be affirmed.

## PROCEDURAL HISTORY

On Dec. 4, 2017, Plaintiffs filed a Complaint against the City and Defendant Scott Wilson, then a Member and Mayor Pro-Tempore of the Baton Rouge Metro

Council, in his official capacity, alleging viewpoint discrimination in violation of the First Amendment and other claims.[1] ROA.34-54. On Dec. 12, 2017, Plaintiffs filed a First Amended Complaint against the same Defendants. ROA.57-79. The substantive claims asserted against the City and Defendant were identical. *See generally id.*

For most of the pendency of the case, both Defendant and the City were represented by the same counsel. Then, in August 2018, Defendants' counsel represented to the Trial Court that there was a conflict between the City and Defendant Scott Wilson that required the appointment of separate counsel to represent Wilson. ROA.656; *see also* ROA.669. The trial was thus taken off calendar, and the City and Defendant obtained separate counsel. ROA.656, 669-670. A new trial date was then set.

In the lead up to trial, Plaintiffs determined that having two sets of independent lawyers at trial representing what was, in essence, one entity would be inefficient and unwieldy. Recognizing that two sets of attorneys were unnecessary, on August 5, 2020, in "an effort to promote efficiency in the preparation of this

---

[1] Because the defendant in this case was a government official in their official capacity, the name of the defendant changed over the course of the case as different people held that position. *See* Fed. R. Civ. Proc. 25 (Substitution of Parties). First it was Mayor Pro Tem Scott Wilson, then Mayor Pro Tem Lamont Cole, and now Mayor Pro Tem Brandon Noel.

matter for trial and presentation of evidence at trial," Plaintiffs moved for the dismissal of the City. ROA.823-24. Plaintiffs did not settle their claims asserted against the City or otherwise voluntarily waive the substance of any claim. *See id*. Rather, as made clear in Plaintiffs' motion, Plaintiffs' dismissal of the City was a procedural step, taken in the interests of judicial economy and the economy of the Parties, and Plaintiffs expressly reserved "any and all rights" they had against the remaining Defendant. ROA.823.

On September 30, 2020, Defendant filed a motion to dismiss. ROA.913-920. In his Motion to Dismiss, Defendant argued that he must be dismissed because Plaintiffs dismissed with prejudice their claims against the City as a redundant party and the Trial Court thus lacked jurisdiction to hear those same claims asserted against Defendant. *See generally id.* The Trial Court denied the Motion to Dismiss on January 28, 2021. ROA.1281-1294.

In rejecting Defendant's argument, the Trial Court reasoned that "dismissal of [] redundant parties appears to be more a matter of judicial discretion and procedural housekeeping that should not substantively affect the Plaintiff's claims, not a sword with which to attack unsuspecting plaintiffs." ROA.1292 (citation and quotation omitted). The Trial Court also noted that Defendant "cited no authority supporting the result he seeks" and that Defendant's reliance on "general

statements" from United States Supreme Court and Fifth Circuit precedent describing the nature of official capacity suits and dismissals with prejudice was misplaced. *Id.*

The Trial Court further observed that "the Federal Rules are diametrically opposed to a tyranny of technicality and endeavor to decide cases on the merits" and held that Defendant's reading of appellate case law was a "hyper-technical" application that, along with being incorrect, "would work a manifest injustice in this case" by depriving Plaintiffs of their right to have their claims adjudicated on their merits. *Id.* at ROA. 1292-93.

Finally, the Trial Court noted that Defendant was seeking to have it both ways, claiming earlier in the litigation that he and the City had divergent interests sufficient to require separate counsel and delay of the impending trial, but then asserting in the Motion to Dismiss that he and the City were procedurally identical for purposes of dismissal. ROA.1293.

After the Trial Court denied Defendant's Motion to Dismiss, Defendant sought to stay the matter pending this appeal. ROA.1297-1317. On Tuesday, March 2, 2021, the Trial Court denied that motion to stay. ROA.2215-2223. On Saturday, March 6, 2021, Defendant then filed an emergency motion for a stay pending appeal with this Court. This Court denied the motion on March 8, 2021.

Following Defendant's unsuccessful attempts to stay the trial, a bench trial took place on March 17, 2021. ROA.1504-1505. Mayor Pro Tem Scott Wilson declined to testify at the trial. So at trial, Plaintiffs introduced into evidence seven videos from two different meetings in which Wilson had expelled public commenters after they mentioned Alton Sterling or criticized the police. ROA.1514. That evidence is summarized in Table 1:

**Table 1: Mayor Pro Tem Scott Wilson ordered seven individuals removed after they mentioned Alton Sterling or criticized the police.**

| Date | Speaker | Agenda Item Topic | Speaker Discusses | Expelled? |
|---|---|---|---|---|
| 5/10/17 | Michael McClanahan | Settlement of sewer back-up claim | "on July the fifth, 2016, Alton Sterling was killed. . ." | Yes |
| 5/10/17 | Gary Chambers | Settlement of sewer back-up claim | "Police department. . . " | Yes |
| 5/10/17 | Eugene Collins | Police-involved incident investigations. | "I oppose this motion because on July 5th -" | Yes |
| 5/10/17 | Coby Weaver | Police-involved incident investigations. | Alton Sterling, and fact that "two black men" removed. | Yes |
| 5/10/17 | Sydney Epps | Police-involved incident investigations. | Termination of Chief Dabadie | Yes |
| 5/10/17 | Lynne Espinoza | Police-involved incident investigations. | Asks for officers to be fired. | Yes |
| 6/28/17 | Arthur Reed | Settlement of insurance claim | Alton Sterling | Yes |

Defendant's contention was that he did not expel the people identified in Table 1 because of their viewpoint but rather because they were "off topic." To rebut that, Plaintiffs introduced eight videos from four different meetings in which public commenters went far off-topic *without* being expelled by the Mayor Pro Tem. ROA.1515. One commenter was even allowed to read a Dr. Seuss book cover-to-cover without being removed. ROA.1964. That evidence is summarized in Table 2:

**Table 2: Eight times people spoke completely off-topic – but did not mention Alton Sterling or criticize the police – and were not removed.**

| Date | Speaker | Agenda Item Topic | Speaker Discusses | Expelled? |
|---|---|---|---|---|
| 9/27/2017 | Phillip Lillard | Office of Community Development positions | Only discusses previous item. "I'm against item 76 because the other item shouldn't have passed." | No. |
| 9/27/2017 | Gary Chambers | Office of Community Development positions | Complaints about allocation of tax money and murder rate. | No. |
| 6/14/2017 | Janice Weber | Endeavor with Council on Aging | Discusses next item, a millage. | No. |
| 6/14/2017 | Dan Weber | Endeavor with Council on Aging | Discusses next item, a millage. | No. |
| 8/23/2017 | Don Ortega | Moving the Baton Rouge Zoo | Complaints about his former job with BREC. | No. |

| | | | | |
|---|---|---|---|---|
| 8/23/2017 | Russell Kelly | Support for La. DOJ investigation into Alton Sterling shooting. | Team training for Metro Council. | No. |
| 8/23/2017 | Gary Chambers | Office of Community Development positions | Complaints about allocation of tax dollars and murder rate. | No. |
| 5/14/2014 | Jim Mora | Annexation of St. George | Reads Dr. Seuss book cover to cover. | No. |

Notably, Defendant did not offer a single example of any Mayor Pro Tem *ever* expelling a person for being "off-topic" – unless they were criticizing the Baton Rouge Police Department. ROA.1969.

On July 7, 2021, this Court dismissed Defendant's first appeal for lack of interlocutory appellate jurisdiction. ROA.1770-1771.

After post-trial briefing, on September 22, 2025, the Trial Court issued its findings of fact and conclusions of law. ROA.1920-1974. The Trial Court found that Plaintiffs' removal from the podium was a violation of their First Amendment rights. ROA.1970. The Trial Court also found that Defendant's act of ordering Plaintiffs removed from the Metro Council chamber were not reasonable and viewpoint neutral and that those removals were thus "a separate violation of [Plaintiffs'] First Amendment rights. ROA.1971.

Accordingly, the Trial Court entered judgment "in favor of Plaintiffs Michael McClanahan and Eugene Collins and against Defendant" on "their claims for violations of their First Amendment rights." ROA.1975. The Trial Court entered judgment against Plaintiff Gary Chambers on all claims, and against all Plaintiffs on their Fourteenth Amendment claims. *Id.*

## ARGUMENT

### I. The Trial Court's judgment should be affirmed because Defendant's argument that the Trial Court accidentally dismissed the entire case has no basis in law.

In this appeal, Defendant re-raises the argument he made in his failed 2021 interlocutory appeal. The theory of Defendant's motion to dismiss, the failed interlocutory appeal, and this appeal, is as follows:

1. The Defendant in his official capacity and the City are the same entity. Appellant's Brief at 10.

2. The official capacity claim against Defendant was therefore "redundant" to Plaintiffs' claim against the City. *Id.* at 11.

3. Because of the redundant defendants, Plaintiffs dismissed the claim against the City by agreement of the parties. *Id.*

4. By doing so, Plaintiffs automatically and unintentionally also dismissed their claims against the Defendant. *Id.* at 11.

The first three points are correct and undisputed. It is point four that is flatly incorrect, unsupported by any authority, and contrary to every court decision addressing the topic. Indeed, in briefing submitted to the Trial Court, Defendant acknowledged that he had not found a single case supporting his position. ROA.1304.[2] That is because the case law is clear: dismissing a redundant party does *not* dismiss the other party. In *Castro Romero v. Becken*, for instance, this Court noted that the Trial Court was "correct" in dismissing official capacity claims against municipal officers and two employees in the Army Corps of Engineers "as these allegations duplicate claims against the respective governmental agencies themselves" – but went on to separately analyze the claims against the other defendants. 256 F.3d 349, 355 (5th Cir. 2001). Further, the court in *Dunn v. Guidry* noted that courts "routinely and overwhelmingly deem suits against both a local government official in his official capacity and the entity of which the officer is an agent to be redundant, and dismiss the official-capacity claims against the individual defendant on that basis." No. 11-cv-489, 2012 WL 6216743, at *2 (M.D. Ga. Dec.

[2] Defendant wrote: "Instead, at one point, the district court rested its decision on the motion to dismiss on the lack of a 'goose' case decided on the same facts. 'Wilson has cited no authority supporting the result he seeks' (Doc 159, p. 12). True that Wilson could locate no one case where a plaintiff voluntarily dismissed with prejudice the claim against the municipal entity and then tried to proceed to trial on the redundant claim against the municipal official on the same claim." ROA.1304.

13, 2012); *see also Broussard v. Lafayette City-Parish Consol. Gov't*, 45 F. Supp. 3d 553, 571 (W.D. La. 2014) (dismissing "redundant" official capacity claims, allowing the same substantive claims to proceed against the agency); *Douglas v. Univ. of Pittsburgh*, No. 15-938, 2016 WL 695661, at *2 (W.D. Pa. Jan. 19, 2016) (noting that dismissal is proper where "a party was found to be redundant" because dismissing one "will not affect Plaintiff's ability to investigate [claims against the other party], nor will it affect his ability to prove damages"); *Zavala v. City of Baton Rouge*, No. 17-656-JWD-EWD, 2018 WL 4517461, at *14 (M.D. La. Sept. 20, 2018) (dismissing redundant official capacity claims while maintaining claims against the other party).

As the Trial Court correctly noted, "dismissal of the redundant parties appears to be more a matter of judicial discretion and procedural housekeeping that should not substantively affect the Plaintiff's claims, not a sword with which to attack unsuspecting plaintiffs." ROA.1292 (citations and quotations omitted).[3]

[3] Defendant also argues that the real problem is that the wrong redundant defendant was dismissed. Appellant's Brief at 15. He contends that it "is clear that the redundant claim, the one which should be dismissed in cases of municipal liability, is the claim against the officer in his official capacity." *Id.* He cites a series of cases that do dismiss the officer-in-his-official-capacity claim, but <u>none</u> of those cases say *which* redundant defendant must be dismissed. As the Trial Court appropriately recognized, Plaintiffs dismissed their claims against the City "merely as a matter of housekeeping." ROA.2220. Defendant cites no authority and provides no conceivable justification why, having named both an official and a government entity as defendants, a plaintiff *must* prosecute his or her claims against the government entity – but not, apparently, against the official – or forfeit the right to pursue them at all.

Bizarrely, Defendant cites a series of cases that completely undercut his argument. He cites *Broussard v. Lafayette City-Parish Consol. Gov't*, 45 F. Supp. 3d 553 (W.D. La. 2014) and *Williams v. Zordan*, 2023 WL 6451111 (W.D. La. 2023) for the proposition that government and officer-in-official-capacity claims are redundant. But in both those cases the Trial Court dismissed one of two redundant defendants – and <u>then allowed the plaintiff's claims to proceed against the other</u>. That is exactly what happened here.

Defendant does not cite a single case where dismissal with prejudice against one party was held to operate as an adjudication on the merits of claims against a *different* party.[4] That the City is the real party in interest for Plaintiffs' claims against Defendant is immaterial. As recognized by *Castro Romero* and several other cases, where duplicative claims are presented against multiple parties it is appropriate as a procedural matter – and does not operate as a forfeiture of rights – to allow a case to proceed against only one defendant.

[4] Defendant cites only one case, *Littlejohn v. New Orleans City*, 493 F. Supp. 3d 509 (E.D. La. 2020) where official capacity and municipality claims were concurrently dismissed. That case, however, involved the routine granting of a Rule 12(b)(6) motion on *substantive* grounds. *Id.* at 520. Plainly, where a claim is substantively deficient, it is deficient with respect to all parties against whom the identical claim is asserted. Just as plainly, it does not follow that a procedural dismissal of a redundant party, expressly done for procedural reasons in the interest of judicial economy, operates as a substantive forfeiture of a meritorious claim against another party.

Finally, the Trial Court correctly noted that Defendant argued, on the one hand, that he and the City were so procedurally *distinct* as to generate a conflict that required separate counsel and substantial delay of trial proceedings,[5] but on the other, that the parties were so procedurally *identical* as to require dismissal of both parties if either were voluntarily dismissed from the lawsuit.[6] Defendant cannot have it both ways. Defendant was named as a separate party from the City and Plaintiffs only dismissed the City as a procedural matter because Defendant's presence in the case ensured the trial could proceed without forfeiting any party's substantive rights. This did not result in the accidental dismissal of all claims against all defendants. As the Trial Court recognized, holding otherwise would "work a manifest injustice" by rewarding a "gotcha" tactic and depriving Plaintiffs of the right to a substantive adjudication of their First Amendment rights. ROA.1293; *see also Amberg v. FDIC*, 934 F.2d 681, 686 (5th Cir. 1991) (holding that "[d]oubt should be resolved in favor of judicial decision on the merits of a case" and that "a technical error ... should not deprive plaintiff of an opportunity to present the true merits of his claims"). Put another way, Plaintiffs could have filed their action solely against Defendant in his

---

[5] ROA.1284, ROA.1282 (noting the existence of a "significant conflict").

[6] *See also* ROA.658 (representing that the "significant conflict" referenced by the Trial Court required Defendant and the City to retain separate counsel).

official capacity without naming the City. In that case, the Trial Court's subject matter jurisdiction would be beyond any reasonable dispute. Plaintiffs cannot, as a matter of law or common sense, divest themselves of a claim against Defendant in his official capacity by also naming the City (a dispensable party) but then dismissing the City in the interest of judicial economy.

Defendant has been making this same argument for a half-decade. In all those years, he has not been able to find a *single case anywhere in the country* in which a court reached the conclusion he seeks here. The Trial Court's order should be affirmed.

## II. The Trial Court's admission of the post-May 2017 comparator videos should be affirmed because courts repeatedly hold such evidence admissible to prove viewpoint discrimination.

In this case, the Baton Rouge Mayor Pro Tempore – the person who ordered Plaintiffs removed – refused to testify at deposition or trial. ROA.268. Accordingly, the primary evidence at trial about his intent was a series of videos showing his widely disparate treatment of public commenters depending on the content and viewpoint of their speech.

Specifically, Plaintiffs introduced seven videos from two different meetings in which the Mayor Pro Tem expelled public commenters after they mentioned they mentioned Alton Sterling or criticized the police. ROA.1514.

Defendant's response was that these people were expelled because they were "off topic" – not because of their viewpoint. E.g., ROA.1695 (arguing that "Plaintiff Michael McClanahan was ordered to be taken out because his comments were off topic and his actions were willfully disruptive.") To rebut that, Plaintiff's offered, and the Trial Court admitted, eight videos from four different meetings of public commenters who went far off topic *without* being expelled by the Mayor Pro Tem. ROA.1515. One commenter was even allowed to read a Dr. Seuss book cover-to-cover without being removed. ROA.1964. Notably, Defendant did not offer a single example of any Mayor Pro Tem *ever* expelling a person for being "off topic" – unless they were criticizing the Baton Rouge Police Department. ROA.1969.

Based on this evidence, the Trial Court made a factual finding that "the record reflects that at the May 10, 2017, Metro Council meeting, Wilson ordered the removal of every speaker who mentioned Alton Sterling, the date of his killing, or criticized the police, regardless of whether they were speaking apparently on-topic during their allotted public comment period." ROA.1963. And the Trial Court found that "Wilson's forcible removal of all those community members who brought up Alton Sterling's killing and the police stands in contrast to his treatment of community members whose comments, although not immediately clearly relevant

to the agenda items at hand, did not touch on Alton Sterling's killing or the police involved." ROA.1970.

On appeal, Defendant argues that the Trial Court "erred in admitting in evidence at trial" the videos from after May 10, 2017. Appellant's Brief at 17-18. But Defendant does not make any intelligible argument about *why* the Trial Court erred. He just contends that one case – *Heaney v. Roberts*, 147 F.Supp.3d 600 (E.D. La. Dec. 2, 2015) – does not specifically say a court can use post-event comparator evidence to infer intent. But if one particular case does not explicitly say that such evidence is *allowed*, it does not follow that such evidence is *forbidden.* To the contrary, multiple courts have held that such evidence is permissible:

> The question is how to identify the Government's intent. Of course, direct evidence of viewpoint discrimination would be highly probative, but "the government rarely flatly admits it is engaging in viewpoint discrimination." *Id.* That leaves two types of evidence. The first is retrospective, that is, evidence from before the decision was taken to close the forum insofar as it may show whether the Government acted in order to suppress a disfavored view. The second is prospective, namely evidence of what happened once the forum was closed.

*Am. Freedom Def. Initiative v. WMATA.*, 901 F.3d 356, 365-66 (D.C. Cir. 2018).

As the court in *Am. Freedom Def. Initiative* noted, of this second kind of evidence, "most relevant is a lack of evenhandedness in the Government's actions after the forum is closed." *Id.* at 366. And where "the government states that it

rejects something because of a certain characteristic, but other things possessing the same characteristic are accepted, this sort of underinclusiveness raises a suspicion that the stated neutral ground for action is meant to shield an impermissible motive." *Id.*, *citing Ridley v. Mass. Bay Transp.* Auth., 390 F.3d 65, 87 (1st Cir. 2004); *see also Morgan v. Swanson,* 755 F.3d 757, 759 (5th Cir. 2014) (in finding plausible religious viewpoint discrimination, court noted that a teacher "later announced that all materials—religious or otherwise—were prohibited from the classroom, but the Morgans noticed that the other students were allowed to exchange gifts."); *Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.*, 653 F.3d 290, 292-293 (3d Cir. 2011) (affirming a district court's finding of a First Amendment violation based on viewpoint discrimination where the plaintiff's "comparator evidence" proved that "despite its written advertising policy, the [defendant] had accepted many noncommercial ads in recent years, several of which bore a striking resemblance to the coalition's ad.").

That is exactly the kind of evidence offered at trial here. The government said it was silencing Plaintiffs because their speech had the characteristic of being "off topic." But the evidence showed that other "off topic" speech was routinely permitted. Plaintiffs' evidence bolstered the inference that Defendant acted with an improper motive, and the Trial Court did not err in admitting it.

## III. The Mayor Pro Tem was the final policymaker with regard to removal of people making public comments.

Under *Monell*, "[t]o establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009). When the final policymaker themself violated a plaintiff's constitutional right, *Monell* is satisfied. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999) (recognizing that the "official policy" requirement is met "[w]here no 'official policy' was announced or promulgated but the action of the policymaker itself violated a constitutional right.").

Here, the Baton Rouge Mayor Pro Tempore, Scott Wilson, ordered Plaintiffs removed. Under the Baton Rouge Plan of Government, the Mayor Pro Tem presides over Metro Council meetings and is responsible for handling public comment. ROA.1045; ROA.202. The Baton Rouge Code of ordinances notes that a "ruling of the chair on [a] procedural point shall be final." ROA.1950. The testimony at trial confirmed that "the Mayor Pro-Tem was the final decision maker for the City/Parish of Baton Rouge about whether someone should be removed during public comment." ROA.2396-2397. Accordingly, the Trial Court made a factual

finding that "Wilson, as Mayor Pro Tempore, was the final policy and decisionmaker with respect to allowing and removing speakers from public comment at the Metro Council meetings during his tenure." ROA.1950.

Indeed, in the Trial Court, Defendant contended that his actions in chairing a meeting of the East Baton Rouge Metropolitan Council were "legislative acts" because they had a "degree of discretion and public-policy-making traditionally associated with legislative functions." ROA.207. As a result, Defendant argued that any discovery into his "mental impressions, opinions, or motives" with respect to his acts as meeting chair was barred by legislative privilege. ROA.205. Based on these arguments, the Trial Court issued a protective order providing that Defendant could not be deposed or made to answer interrogatories concerning those acts. ROA.267-268.Now, on appeal, Defendant turns around and argues the opposite – that he was *not* a policymaker. Appellant's Brief at 19-22. Once again, Defendant tries to, but cannot, have it both ways.

Beyond that, Defendant's argument holds no water. This Court has explained that "Policymakers act in the place of the governing body in the area of their responsibility; they are not supervised except as to the totality of their performance." *Bennett v. Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc); *Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 530 n.7 (5th Cir. 2006), *citing Mandel v.*

*Doe*, 888 F.2d 783, 792-94 (11th Cir. 1989) (noting that where decisions "are not subject to review," discretionary review initiated by the municipal official himself does not prevent the official from being a final policymaker). And regarding official policies, when "the decision to adopt [a] particular course of action is properly made by that government's authorized decisionmakers, it . . . represents an act of official government 'policy' as that term is commonly understood." *Eltalawy v. Lubbock Indep. Sch. Dist.*, 816 F. App'x 958, 962 (5th Cir. 2020) (*quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

Here, Baton Rouge's Plan of Government and Ordinances assign responsibility for handling public comment to the Mayor Pro Tem. He "allocates time for public comment, and members of the public may speak only with his permission." ROA.1950.. His actions are final and unreviewable within the structure of the City's government. *Id.* The Trial Court thus did not err in concluding that the Mayor Pro Tem was the final decisionmaker and policymaker for the topics at issue here.

## IV. Defendant's appeal should be denied because he provides no clear error in the Trial Court's factual findings .

Defendant next spends pages of his brief arguing that it was right for Plaintiffs McClanahan and Collins to be removed during public comment because their speech

was off topic, or because other people were disruptive, or because Collins started to speak before the Mayor Pro Tem said the words "anyone wishing to speak." Appellant's Brief at 25-42.

These arguments are mingled together and undercut themselves. For example, Defendant argues that the "reason" why McClanahan "was ejected" was "violation of the 'on topic' policy." *Id.* at 25-26. But then Defendant tries to justify the ejection of McClanahan on the different basis of "disruptive behavior attributable to McClanahan" – specifically audience members clapping saying "no justice, no peace." *Id*. at 28-29.

But Defendant also concedes that the clapping and audience statements came *after* the Mayor Pro Tem had ordered police to remove Mr. McClanahan. Appellant's Brief at 28. So even if the audience was disruptive, and even if it were attributable to McClanahan, it could not possibly have been the basis for the Mayor Pro Tem ejecting McClanahan because it came <u>after</u>, not <u>before</u>, the ejection order. *See id.* at 30 ("McClanahan continued to speak while being escorted from the podium, stressing loudly 'NOT RIGHT.' McClanahan admits that he continued to talk after the Mayor Pro Tempore asked that he be removed from the room. McClanahan [*sic.*] actions resulted in the disruption by the audience . . .") (citation omitted).

Regarding Plaintiff Collins, Defendant makes the bizarre argument that the Mayor Pro Tem ordered police to remove Mr. Collins because he violated an unwritten rule that people cannot speak during public comment until the Mayor Pro Tem opens comment *and also* verbalizes the words "anyone wishing to speak on this item" before each public commenter. *Id.* at 36-41.

Defendant concedes that Collins approached the podium and tried to speak "during public comments" (*id*. at 36). And the video shows that the Mayor Pro Tem had in fact asked "anyone wishing to speak on the item?" ROA.1945. But Defendant contends that the Mayor Pro Tem had not <u>again</u> made the verbal invitation after the prior commenter and before Mr. Collins – and so the Mayor Pro Tem was justified in having police forcibly remove Mr. Collins. Defendant makes this argument even though he concedes that another speaker <u>in the same meeting</u> was "was allowed to speak without the call for 'anyone wishing to speak.'" Appellant's Brief at 38.

In factual findings, the Trial Court rejected this argument. The Trial Court concluded that the contention that Collins

> violated the policy of not approaching to make public comments until a call is made for "anyone wishing to comment on this item[,]" is undermined first by Defendant's failure to produce any evidence that such a policy existed, second by video evidence that at least one other speaker was *not* removed for the exact same behavior, and third by video evidence that Collins was not removed until he said the word "July."

ROA.1956 (citations omitted). Defendant identifies no error in these findings and even *admits* that he did not follow this supposed policy with respect to at least one other speaker who was neither silenced nor removed. Appellant's Brief at 38.

Alternatively, Defendant argues on appeal that Mr. Collins' act of "approaching the podium to speak" during public comment but before the Mayor Pro Tem had again said the words "anyone wishing to speak" was so inherently "disruptive" that it justified forcible police removal. Appellant's Brief at 41. The Trial Court also concluded that it could not "accept the contention that Plaintiff Collins 'created bedlam' by approaching the podium calmly, with a paper in his hand, to speak during a public comment period." ROA.1956. In response, Defendant offers nothing more than his disagreement with the District Court. *See* Appellant's Brief at 41. This falls far short of Defendant's burden to identify clear error.

Because Defendant has provided no legally cognizable basis to overturn the Trial Court's factual findings about the context of and reasons for Plaintiffs' removal, the District Court's judgment should be affirmed.

## V. This Court should deny Defendant's appeal because his *Heaney*-district-court-footnote argument is wrong and inapplicable to these facts.

Defendant next argues that the Trial Court "incorrectly set[] out the test" for determining intent when the Trial Court wrote that "to determine Wilson's intent,

the Court compares how speakers who discussed Alton Sterling and the police were treated as opposed to those speakers who discussed other topics." Appellant's Brief at 42, citing ROA.1963.

Defendant's only citation for what he contends to be the correct test is a footnote from a district court case, which said that if the Jefferson Parish Council tried to stop a public commenter from talking about parking meters in Orleans Parish, and "assuming that all other speakers were likewise prohibited from speaking about parking meters in Orleans Parish, the restriction would not be viewpoint-based." *Heaney v. Roberts*, 147 F. Supp. 3d 600, fn. 4 (E.D. La. 2015). The court's reasoning was that complaining to the Jefferson Parish counsel about Orleans parking meters would "be wholly off-subject and beyond the scope of the Jefferson Parish Council's business and control." *Id.*

From that district court footnote, Defendant extrapolates the idea that if the Baton Rouge Mayor Pro Tem silenced *everyone* from criticizing the Baton Rouge police, it could not be viewpoint discrimination. Appellant's Brief at 42-43. Defendant has it exactly backwards. As this Court held in *Heaney v. Roberts*, 846 F. 3d 795, 803 (5th Cir. 2017), viewpoint discrimination exists "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." There is no "shoot the moon" exception where a government

actor's viewpoint discrimination is forgiven if he or she is able to silence everyone with a particular viewpoint.

Defendant also tries to squeeze this case into the *Heaney* district court footnote on the idea that "Alton Sterling and the police" were "not on the agenda for the May 2017 meeting." Appellant's Brief at 44. But that is flatly false: Agenda Item 60 at the May 2017 meeting addressed "officer involved incident investigations." ROA.1934. The Trial Court credited witness testimony that this was "directly related to the death of Alton Sterling." ROA.1957. Four of the people removed at the May 2017 meeting were removed during discussion of that agenda item.

Thus, even if the *Heaney* district court footnote were controlling, it is nothing like this case. That footnote was about the obvious off-topic-ness of complaining about Orleans Parish issues to a Jefferson Parish council. Here, the public commenters were talking about the actions of the Baton Rouge police to the Baton Rouge council, many of them during an agenda item about "officer involved incident investigations." This Court should reject Defendant's *Heaney*-district-court-footnote argument and affirm the judgment.

## VI. This Court should affirm the judgment because Defendant does not address the Trial Court's independent, alternative basis for finding Defendant violated Plaintiffs' First Amendment rights.

Defendant only addresses whether the Mayor Pro Tem's act of stopping Plaintiffs from speaking and removing them from the podium violated their First Amendment rights. But the First Amendment does not only protect the right to speak; it also protects the "right to listen." *Free Speech Coal., Inc. v. Paxton,* 606 U.S. 461, 506 (2025), *citing Miller v. California,* 413 U.S. 15 (1972); *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 390 (5th Cir. 2024) ("The First Amendment protects the right to hear as well as to speak").

For that reason, in addition to the right to speak at a public meeting, there is also a separate "First Amendment right to attend a public meeting." *Heaney v. Roberts*, 147 F. Supp. 3d 600, fn. 10 (E.D. La. 2015); *see also Asgeirsson v. Abbott,* 696 F. 3d 454, 465 (5th Cir. 2012) (holding that the First Amendment "sometimes requires [officials] to open their proceedings to the public."); *Whiteland Woods, L.P. v. Twp. of W. Whiteland,* 193 F.3d 177, 181 (3rd Cir. 1999) ("Planning Commission meetings are precisely the type of public proceeding to which the First Amendment guarantees a public right of access.").

Here, the Mayor Pro Tem did not just stop Plaintiffs from speaking. He also removed them entirely from the council meeting, preventing them from attending

the rest of the meeting or listening to other speakers. ROA.1970. Defendants concede in their brief that a "First Amendment right to attend a public meeting was also made" by Plaintiffs. Appellant's Brief at 5. And the Trial Court ruled in McClanahan and Collins' favor on that claim as a separate First Amendment violation. ROA.1921, ROA.1971 ("Plaintiffs McClanahan and Collins' removal from the Metro Council chamber was therefore a separate violation of their First Amendment rights.").

But Defendant makes no argument whatsoever specific to this independent First Amendment violation. And only one of Defendant's non-jurisdictional issues on appeal – that the Mayor Pro Tem was not a final policymaker – even arguably applies to this independent basis for the Trial Court's judgment.[7] So even if he were correct about every other argument, the Trial Court's judgment should be affirmed because Plaintiffs prevailed at trial on a separate, independent First Amendment violation that he ignores entirely.

## CONCLUSION

For all these reasons, the Trial Court's judgment should be affirmed.

---

[7] As explained in Part III, *supra*, this argument has no basis in law or fact and is contradicted by Defendant's own position earlier in this litigation that the status of his actions as chair as "legislative acts" operated as an absolute bar to discovery into his "mental impressions, opinions, or motives."

Respectfully submitted,

*/s/ William Most*
WILLIAM MOST (No. 36914)
MOST & ASSOCIATES
Hope A. Phelps (La. Bar No. 37259)
David Lanser (La. Bar No. 37764)
201 St. Charles Ave.
Ste. 2500, # 9685
New Orleans, LA 70170
Tel: (650) 465-5023
Email: williammost@gmail.com

BRIAN E. LAHTI
LAHTI HELFGOTT LLC
Utah Bar No. 16298 (PHV)
Tel: (650) 390-4075
Email: blahti@LHlitigation.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 28(b) 32(g) and Fifth Circuit Court of Appeal Local Rule 32.3, undersigned counsel certifies that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,532 words on 30 pages, excluding the accompanying parts specified in Rule 32(f).

2. This brief complies with the typeface requirements and the type style requirements because this brief has been prepared in Microsoft Word using 14-point Equity font.

*/s/ William Most*
William Most
Most & Associates
201 St. Charles Ave., Ste. 2500, # 9685
New Orleans, LA 70170
T: (504) 509-5023
williammost@gmail.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that today, March 2, 2026, a copy of the brief for appellees was served via electronic filing with the Clerk of Court and all registered ECF users by using the CM/ECF system.

*/s/ William Most*
William Most (La. Bar No. 36914)
williammost@gmail.com
201 St. Charles Ave., Ste. 2500, # 9685
New Orleans, LA 70170
T: (504) 509-5023